J-S55029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES WILLIAM BAIZAR | : | |
| | : | |
| Appellant | : | No. 449 WDA 2020 |

Appeal from the Judgment of Sentence Entered February 25, 2020
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001016-2019

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

DISSENTING MEMORANDUM BY BOWES, J.:     **FILED: APRIL 30, 2021**

Charles William Baizar pled guilty to criminal conspiracy of possession with intent to deliver ("PWID") heroin. As part of his sentence, he was ordered to pay $10,229 in lab fees jointly and severally with his co-defendants, Jermaine Belgrave and Sheldon Morales. The majority vacates Appellant's sentence and remands for further development of the record before resentencing, because it finds that Appellant was "saddled with lab fees having to do with crimes with which he was never charged." Majority Memorandum at 7. While I agree with the majority that Appellant has raised a challenge to the legality of his sentence that we can reach, I disagree with its conclusion that improper fees were imposed. Since I would find that the lab fees

---

[*] Retired Senior Judge assigned to the Superior Court.

stemmed from Appellant's conviction, and because I further disagree that additional development of the record is needed, I respectfully dissent.

I begin with the pertinent facts, which were derived from Appellant's statement to police and corroborated by the video surveillance footage recovered from the Erie County Marriot Hotel's security system. On February 7, 2019, Appellant, Jermaine Belgrave, Sheldon Morales, and an unknown black male known as "Gwajo" drove from Chicago to the Marriott Hotel. The men intended to sell 1,000 grams of heroin to a black male known as "Greg" for $80,000. Minutes after their arrival, Greg arrived in a black SUV vehicle with an unknown driver. Appellant and co-defendant Morales approached the vehicle. Appellant was carrying the bag that contained the heroin. However, when Appellant reached the driver side of the vehicle, the driver exited and began shooting at Appellant. Appellant dropped the bag containing the heroin and fled. Meanwhile, co-defendant Belgrade returned fire on the two buyers. The driver retrieved the bag of heroin, dropping a package that contained 300 grams of heroin, and drove away. Appellant and Belgrade were both shot, but survived.

Appellant was charged with various drug offenses, but ultimately pled guilty to conspiracy to commit PWID. At sentencing, the Commonwealth asked that "427, 580, 1,444, 274, 7,145, 246, and 113" in lab fees be imposed as part of Appellant's sentence. N.T. Sentencing, 2/25/20, at 10. Based on their review of the record, the majority aptly summarized what these at-issue fees pertained to:

- 2 -

First, a Laboratory User Fee Statement (statement) for $427 for AFIS latent print entry and comparison and an administrative handling fee; this fee pertains to Appellant and codefendants Jermaine Belgrave and Sheldon Morales, as well as an additional suspect named Eduardo Santana. Second, a statement for $580 pertaining to a case of attempted homicide, with an administrative handling fee and a firearm functionality test with discharged bullet and cartridge case comparison. Third, a statement for $1,444, with an administrative handling fee and bloodstain identification and DNA sample preparation. Fourth, a statement for $274, with an administrative handling fee and NIBIN Entry/Analysis, which appears to pertain to certain ballistics analysis conducted with the National Integrated Ballistic Information Network. Fifth, a statement for $7,145 with an administrative handling fee and DNA analysis that appears to involve samples taken from a parking garage and a handgun and rounds found therein, with a few other miscellaneous sample sources such as coffee lids. Sixth, a statement for $246, with the administrative handling fee and a cartridge case comparison. Seventh, a statement for $113 with the administrative handling fee and a line item for drug analysis.

Majority Memorandum at 6-7. The court ordered that Appellant pay the requested lab fees jointly and severally with his co-defendants. N.T. Sentencing, 2/25/20, at 11.

Applying 42 Pa.C.S. § 1725.3, the Majority concludes that the court erred when it imposed costs relating to anything other than drug testing, because Appellant was not charged with nor convicted of any homicide related activity.[1] *See* Majority Memorandum at 7-8. The Majority's conclusion fails

---

[1] Section 1725.3 allows for imposition of laboratory or paramedic user fees, covering the costs of prosecution, on a defendant who was convicted of a violation of the Controlled Substance, Drug, Device and Cosmetic Act, "in every case where laboratory services were required to prosecute the crime or violation." 42 Pa.C.S. § 1725.3(a). The statute also requires the state police laboratory to submit a report of the "actual cost" of the laboratory services provided in that prosecution. 42 Pa.C.S. § 1725.3(b)(2).

to account for the fact that Appellant was convicted of **conspiracy** to commit PWID. Thus, determination of the appropriate lab fees hinges on an examination of the extent of Appellant's conspiracy liability, not simply his own role in the conspiracy.[2]

By his own admission, Appellant agreed with co-defendants Jermaine Belgrave and Sheldon Morales to commit the drug deal. This admission is corroborated by Appellant's arrival in the same vehicle as his co-defendants, and his approach of the SUV with co-defendant Morales. During the course of committing the failed drug deal, Appellant and his co-defendants were

_____

[2] Regarding criminal conspiracy liability we have explained:

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, [he] is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

***Commonwealth v. Gross***, 232 A.3d 819, 839 (Pa.Super. 2020) (*en banc*) (cleaned up).

engaged in a shooting. While Appellant himself did not fire a weapon, his co-defendant Belgrave did indeed shoot a firearm. Officers recovered 300 grams of heroin, spent projectiles, and a discarded firearm from the immediate vicinity of the crime scene which were submitted for laboratory testing. Several samples that appeared to be blood were also taken from areas in the garage adjacent to the parking lot and submitted for laboratory testing.

Given the factual context of the case, laboratory testing for Appellant's prosecution involved firearms and tool marks examination, DNA analysis, and fingerprint comparison in addition to drug testing. The fact that Appellant was not charged with possessing or shooting a firearm is of no moment. Similarly, the Majority's reliance on case law that holds that costs cannot be imposed absent a conviction is inapposite. *See* Majority Memorandum at 4-6. Appellant was convicted of a conspiracy that involved a shooting following a failed drug deal. Thus, consistent with § 1725.3, Appellant could be ordered to pay laboratory costs associated with investigation of the conspiracy, including testing of the firearms and the drugs, and the DNA recovered from the scene. A review of the at issue laboratory reports reveals that this is exactly what the Commonwealth asked for and what the sentencing court imposed.

The Majority also holds that a remand is needed so that the Commonwealth can file "an itemized lab fee report delineating the costs associated with Appellant's conviction" consistent with § 1725.3. Majority Memorandum at 8. Despite its detailed summary of the lab costs based on

- 5 -

the lab reports in the certified record, the Majority nevertheless concludes that it "cannot determine whether these laboratory fees were within the sentencing court's authority to impose" without additional factual development. *Id*. at 9. I find this result unnecessary.

I agree that § 1725.3 requires the state police laboratory to submit a report of the "actual cost" of the laboratory services provided in that prosecution, which is something that the Commonwealth did not do here. 42 Pa.C.S. § 1725.3(b)(2). However, since the seven laboratory reports explain the testing conducted and the costs generated as a result, I do not believe that a remand for further factual development on this basis is needed. While I do not condone the Commonwealth's failure to submit an itemized list of the laboratory fees associated with Appellant's prosecution, I also would not expend valuable court resources by remanding for a hearing on a matter that has already been sufficiently developed.

In my view, Appellant's sentence is legal and should be upheld because the sentencing court possessed the authority to impose upon Appellant all costs associated with the investigation of the conspiracy, and there exists sufficient evidence to discern the actual costs. Accordingly, I respectfully dissent.